Paul E. **WEBER**, Defendant
Below, Appellant,

v.

**STATE of Delaware, Plaintiff
Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 29, 1988.
Decided: Aug. 23, 1988.
Rehearing Denied Sept. 16, 1988.

L. Vincent Ramunno, Wilmington, on behalf of appellant.

Richard E. Fairbanks, Jr. and Loren C. Meyers, Deputy Attys. Gen., Wilmington, on behalf of appellee.

Before CHRISTIE, C.J., and HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court en banc).

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Paul E. Weber ("Weber"), was convicted of first degree kidnapping, two counts of aggravated intimidation, intimidation, second degree burglary, second degree assault, menacing, third degree assault, and resisting arrest. The trial judge dismissed a charge of carrying a concealed deadly weapon during the commission of a felony. The jury found Weber not guilty of two counts of second degree kidnapping. Weber was sentenced to a term of life imprisonment, with the possibility of parole, for the first degree kidnapping conviction and to a collective term of seventeen and one-half years imprisonment for the other convictions. Weber now appeals those convictions.

Weber has raised five issues in this appeal. He contends through his attorney that: (1) the prosecutor's remarks during closing argument deprived him of a fair trial; (2) the trial judge was disqualified and improperly refused to recuse himself; (3) references to prior criminal acts were improperly admitted to evidence; (4) the trial judge erred in ruling on matters raised about certain jurors during the trial; and (5) there was insufficient evidence to support his convictions for kidnapping and intimidation.

We have concluded that there was insufficient evidence to support Weber's conviction for kidnapping. Therefore, that conviction is reversed. We have also concluded that references to prior criminal acts by Weber were admitted into evidence improperly in the absence of a cautionary instruction. Consequently, Weber's convictions for intimidation and aggravated intimidation are reversed. We find that there is no merit to any of Weber's other contentions. Therefore, the remaining judgments of conviction are affirmed.

*Facts*

The victim, Elizabeth Long ("Long"), began dating Weber in October 1984. On December 6, 1984, Long told Weber that it was her desire to end their relationship. The next day, December 7, Weber encountered Long and two of her friends, Matthew Plummer ("Plummer") and Jacqueline Klemmer ("Klemmer"). Weber pointed a pistol[1] at Plummer. When Long attempted to intercede, Weber hit her in the face with the pistol.[2] Weber's action knocked out one of Long's teeth and substantially damaged several other teeth. Weber then fled. Long and her friends called the police. Weber was subsequently charged with assault for hitting Long with the pistol.

Thereafter, according to Long, Weber tried to persuade her to withdraw the assault charge against him. Long testified that Weber telephoned her frequently. During one of these telephone calls, Weber is said to have told Long that: "I killed once. I'll kill again." Long stated that

---

1. Weber claims that he was holding a BB pistol while the State claims it was a revolver.

2. Weber claims that he was scratched by Long and that this blow was a reflex action on his part.

Weber offered to pay her to drop the charges. Long, and her friend, Theresa Skidmore ("Skidmore"), also testified that Weber stated that he had his father pay off the judge the last time.

Apparently, Weber also followed Long on several occasions. In one incident, Weber appeared at Long's father's house as she was walking from her car. According to Long, Weber stated that he wanted to talk to her, and, holding his hand near his pants as if he had a weapon, Weber said that he should shoot her. Long ran inside her father's house and called the police. Long filed a complaint against Weber in early February 1985. Warrants were issued charging Weber with aggravated intimidation and intimidation as a result of his threats to Long by telephone and in person.

Following the issuance of the warrants charging Weber with intimidation, Weber assaulted Long again at her home. On the morning of February 13, 1985, Long was at home with Skidmore, another resident of her house, and Long's minor son. Around 10:00 a.m., Weber entered the kitchen where Long, her son and Skidmore were talking. Both Long and Skidmore testified that they saw a handgun protruding from the waistband of Weber's pants. Weber walked towards Long, saying "I'm dead and so are you," or words to that effect. Weber pushed Long against the kitchen wall and told Skidmore to go into the other room. Long's immediate response was to shout for Skidmore to take her son out of the house. Skidmore left the house with Long's son and sought safety two houses away, where she called the police.

In the meantime, Weber and Long began fighting. The fight proceeded throughout the first floor of Long's house. While the fight was in progress, the handgun fell out of Weber's pants. Long then realized that it was only a BB pistol. As the fight continued, Long attempted to reach the door of the house several times. Each time, Weber grabbed her by the hair or the neck. The fight stopped when Weber became sick and regurgitated. At this point, Long went outside to look for help. Long

testified that when she saw no one outside, she went back into the house to keep Weber from leaving and "to get it over with."

The fight resumed immediately when Long re-entered her home. Long succeeded in defending herself against Weber. Long testified that they fought until Weber became tired and "needed a break". As Weber rested, Long left the house again, despite Weber's efforts to stop her. This time, Long saw several policemen outside of her home and went to them for help. Weber remained in the house for another five hours, before he was forced to surrender by the use of tear gas.

*No Basis for Trial Judge's Recusal*

Weber's first argument on appeal is that the trial judge was disqualified in this case because of his experience in presiding at a prior trial. In 1981, Weber was tried for and convicted of second degree murder and a related weapon's offense. On appeal, this Court reversed those convictions and remanded the case for a new trial. *Weber v. State*, Del.Supr., 457 A.2d 674 (1983). At his retrial, conducted before a different judge, Weber was acquitted.

The same judge who had presided over the first trial which resulted in Weber's conviction of second degree murder was assigned to preside at his trial in this matter. Weber filed a pretrial motion for disqualification based upon the designated judge's involvement in Weber's former case. Weber's motion did not allege that the judge was personally biased against him. The motion stated that Weber would feel "more comfortable" if another judge presided. The Superior Court judge declined to recuse himself. In so ruling, the judge stated that he barely remembered the earlier case and that he had no bias for or against Weber.

█ It has been observed that Canon 3 C concerning the disqualification of a judge to sit in a case is the most litigated section of the Code of Judicial Conduct.[3] However, we have found no authority to support the proposition advanced by Weber.

---

**3.** National Judicial College, ABA, *Ethics for* *Judges* 25 (1982).

There is no general rule that a judge is disqualified *per se* because of an adverse decision in a former case involving entirely different and unrelated criminal charges against the same party. *State v. Cabiness,* 273 S.C. 56, 254 S.E.2d 291, 292 (S.C.1979) (per curiam); Annotation, *Disqualification of Judge for Having Decided Different Case Against Litigant,* 21 A.L.R.3d 1369, 1375–77 (1968).

Disqualification is required only when the impartiality of the judge might *reasonably* be questioned, including instances in which the judge "has a personal bias or prejudice concerning a party...." The Delaware Judges' Code of Judicial Conduct provides, in part:

> Disqualification.
>
> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> ....

Del. Judges' Code of Judicial Conduct Canon 3C(1) (1987).

This Court has held that the bias envisioned by Canon 3C(1) is not created merely because the trial judge has learned facts or made adverse rulings during the course of a trial. *Steigler v. State,* Del.Supr., 277 A.2d 662, 668 (1971). Other courts have held a judge is not precluded *per se* from further participation in the same case even if on appeal it has been remanded for a new trial or resentencing. *E.g., United States v. Hollis,* 718 F.2d 277, 280 (8th Cir.1983) (resentencing), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984); *United States v. Baylin,* 696 F.2d 1030, 1042–43 (3d Cir.1982) (resentencing); *McFadden v. State,* 402 A.2d 1310, 1315

(Md.Ct.Spec.App.1979) (retrial); *Commonwealth v. Conner,* 384 A.2d 1192, 1193 (Pa.1978) (per curiam) (resentencing). *See Nerison v. Solem,* 715 F.2d 415, 416–17 (8th Cir.1983) (trial before judge who had accepted guilty plea that had been subsequently vacated), *cert. denied,* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 220 (1984); *State v. Walker,* 166 A.2d 567, 573 (N.J. 1960) (trial before judge who had accepted *non vult* plea and denied writ of habeas corpus).

■ We conclude, *a fortiori,* that a judge's participation in prior proceedings involving a defendant does not *per se* disqualify his participation in subsequent, unrelated proceedings. *See United States v. Gaertner,* 519 F.Supp. 585, 588 (E.D.Wis. 1981). Therefore, we have examined the record to determine if there was any reasonable basis to question the impartiality of the trial judge. In this case, the judge stated that he had no preconceived notions as a result of Weber's prior trial. In seeking the judge's disqualification, Weber did not point to any incident in the earlier proceeding to support a claim of bias. We find that the judge was not required by Canon 3C to disqualify himself and that there was no abuse of discretion when the trial judge declined to recuse himself.[4]

### *Rulings Concerning Jurors During Trial*

Weber's second argument on appeal relates to three separate issues that were raised during his trial involving three separate jurors. When a juror begins his term of service, he is given a copy of a *Handbook for Petit Jurors,* which provides, in part:

> Jurors must not talk about the case with others not on the jury and must not read about the case in the newspapers. They should avoid radio and television

---

**4.** Weber has directed this Court's attention to two remarks that the trial judge made during this trial as a demonstration of bias. We find that neither remark supports a claim of bias. We note that neither remark was objected to when it was made. We also note that the trial judge directed a verdict in Weber's favor on at

least one count of the indictment. The jury also acquitted Weber of several serious charges. To the limited extent that *ex post facto* matters are relevant to the issue of recusal, all of these events demonstrate the apparent impartiality with which the judge conducted Weber's trial.

broadcasts that might mention the case. The jury's verdict must be based on nothing else but the evidence before the Court.

*A Handbook for Petit Jurors Serving in the Superior Court of the State of Delaware* 21 (1971), *quoted in Smith v. State,* Del.Supr., 317 A.2d 20, 23 (1974). This Court has held that the trial judge should, "at the end of each day, caution the trial jury collectively about avoiding accounts of the proceeding which may appear in the news media, including newspapers, radio and television." *Id.* (footnote omitted). As a corollary to the foregoing instruction at the end of each trial, this Court has held that at the commencement of each trial day, the court should inquire of the jury, collectively, as to whether any member has in any way been exposed to accounts of the case in the news media. *Id.*

■ On the second day of Weber's trial, in response to an inquiry from the trial judge about compliance with the court's daily instruction, one juror reported that he had read a newspaper article. The juror told the trial judge that the newspaper was in the jury room. In this case, after the newspaper was removed from the jury room and the other jurors were taken out of the courtroom, the trial judge conducted a *voir dire* of the individual juror.

This Court has held that when a juror responds affirmatively about exposure to the news media, the trial judge should, out of the presence of the remaining jurors, "inquire into the nature and extent of the exposure." *Smith v. State,* 317 A.2d at 23. This is exactly what the trial judge did in Weber's case. The *voir dire* disclosed that the article which the juror read reported that Weber had been convicted in 1981 of second degree murder. According to the juror, he had not discussed the story with any of the other jurors. This juror was discharged, and an alternate was designated to replace him.

Neither Weber's attorney nor the prosecutor requested additional *voir dire* of the jury panel. Weber now challenges the trial judge's decision not to conduct further *voir dire* of other members of the jury panel

about exposure to the newspaper article. Since Weber did not request individual *voir dire* of each juror at trial, he must demonstrate from the record that the trial judge committed plain error. *See Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (en banc) *cert. denied,* 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986); Supr.Ct.R. 8.

This Court has held that the trial judge has broad discretion in examining jurors about their exposure to newspaper articles during the course of a trial. *Smith v. State,* Del.Supr., 317 A.2d 20, 22–24 (1974). There may be situations when a collective *voir dire* of the jury panel about newspaper publicity is inadequate. *Hughes v. State,* Del.Supr., 490 A.2d 1034, 1040–48 (1985). However, in *Smith,* this Court found no abuse of discretion, when the trial judge only questioned the jurors collectively. *Smith,* 317 A.2d at 24.

The events in *Smith* are similar to those that occurred at Weber's trial. A newspaper story that appeared during Smith's trial recounted his criminal record. The defense in *Smith* requested individual *voir dire* of the jurors to ascertain if any of them had read the story. The trial judge decided to question the jurors collectively. One juror in *Smith* disclosed that he had read the story but had not discussed it with anyone. *Id.* at 22–23. In this case, Weber offers no reason as to why the collective inquiry of the jury was inadequate. The fact that one juror responded affirmatively gives credence to the efficacy of the inquiry. *See Jackson v. Amaral,* 729 F.2d 41, 45 (1st Cir.1984). Under the facts of this case, we find no abuse of discretion.

■ The second incident involving a juror during Weber's trial occurred during a luncheon recess. Weber's father was eating in the cafeteria of the courthouse. The jury foreman, unaware of the identity of Weber's father, sat at the same table to eat his lunch. The two men started to converse about various topics. The jury foreman mentioned that he was serving as a juror in a particular courtroom. Weber's father responded that his son was on trial in that courtroom and asked that they not discuss the case.

This incident was promptly reported to the trial judge. The trial judge interviewed the jury foreman and Weber's father separately in the presence of counsel. The trial judge ascertained the nature of the contact, its duration, and the absence of any discussion about the case. *See Smith v. State,* 317 A.2d at 23–24. The trial judge concluded that the jury foreman's ability to render an impartial verdict had not been compromised. Neither Weber's attorney nor the prosecution sought the foreman's discharge from the jury. Weber's attorney specifically stated that he was satisfied with the foreman. Weber now argues that the trial court's *voir dire* of the foreman should have been more thorough.

The determination of a juror's impartiality is the responsibility of the trial judge who has the opportunity to question the juror, observe his or her demeanor, and evaluate the ability of the juror to render a fair verdict. *Hughes v. State,* 490 A.2d at 1041. A decision not to discharge a juror, particularly in the absence of a request from either party following *voir dire* into an incident, will not be overturned without a showing of a prejudicial abuse of discretion amounting to plain error. *See Styler v. State,* Del.Supr., 417 A.2d 948, 953 (1980).

We find that the trial judge did not abuse his discretion, and, hence, did not commit plain error by not *sua sponte* discharging the foreman from the jury. *See Williams v. State,* Del.Supr., 494 A.2d 1237, 1243 (1985).

■ Weber's third claim relating to an incident involving a juror is that the trial judge erred in not discharging a female juror. During the trial, it was disclosed that the juror knew one of the secretaries who worked for the prosecutor in the witness room of the courthouse. The juror stated that she did not know the secretary very well and that her acquaintance with the secretary would not affect her in judging Weber's case. The same juror also acknowledged that she was currently employed in the criminal division of the Prothonotary's Office. She stated that she had not heard or seen anything about the Weber case in the course of her employment and that she remained impartial. Neither the prosecutor nor Weber's attorney asked to have the juror excused. Therefore, once again, Weber has the burden of demonstrating that it was plain error not to discharge this juror. *See, e.g., Wainwright v. State,* 504 A.2d at 1100; Supr.Ct.R. 8.

This Court has held that a casual acquaintance with a witness is not a basis for automatic disqualification. *See Holmes v. State,* Del.Supr., 422 A.2d 338, 342 (1980). The juror stated that she was not well acquainted with the witness room secretary. The juror also stated that, despite her employment in the Prothonotary's Office, she had had no contact with Weber's case and that she would be able to be impartial. This Court has held that it is not an abuse of discretion to empanel jurors with a law enforcement affiliation when the jurors indicate an ability to be impartial. *See Bailey v. State,* Del.Supr., 490 A.2d 158, 165–66, *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). In view of the juror's responses to the trial judge's questions, and in the absence of an objection from Weber's attorney, we find that the trial judge did not commit plain error.

*References to Prior Acts and Events*

Weber was charged with first degree assault as a result of the incident when he struck Long with a pistol in December 1984. According to the testimony of Long and her friend, Skidmore, Weber tried to persuade Long not to testify at his trial. Long testified that Weber threatened her with violence and offered her money. According to Long, Weber also told her that he would obtain an acquittal by bribing the judge.

Weber was charged with intimidation and aggravated intimidation based on his expression of intent to bribe the judge, his offer of money to Long, and his threats of violence against Long. *See* 11 *Del. C.* §§ 3532–3533. The substance of actual threats and statements attributed to Weber by Long were words to the effect "I killed

once, I'll kill again" and "[my] father took care of the judge last time."

Weber objected to the admission of these statements on the basis that they would inform the jury of his past criminal experience.[5] Weber argued that these statements constituted evidence of prior bad acts as described in D.R.E. 404(b). Weber asked the trial judge not to admit these statements into evidence contending that the probative value of the statements was substantially outweighed by the danger of unfair prejudice. *See* D.R.E. 403. The State argued that Weber's statements were integral elements of the intimidation offenses with which Weber was charged based upon his threats to Long. The trial judge found the State's position to be persuasive and overruled Weber's objection.

D.R.E. 404(b) formalizes the general common law rule forbidding the introduction of character evidence to prove that a defendant acted in conformity therewith on the occasion in question. *Getz v. State*, Del.Supr., 538 A.2d 726, 730 (1988). Rule 404(b) is divided into two parts. The first part proscribes the admittance of evidence to prove propensity to commit the crime which is charged. The second part enumerates illustrative purposes for which evidence of other acts, crimes, or wrongs may be used, other than for showing propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." D.R.E. 404(b). In deciding whether to admit evidence, the trial judge acts in his sound discretion, and his decision will not be disturbed in the absence of a clear abuse of discretion. *E.g.*, *Baynard v. State*, Del. Supr., 518 A.2d 682, 692 (1986).

In the case *sub judice*, the evidence of Weber's statements to Long concerning his prior criminal activity does not fit into any one of the exceptions to the general rule prohibiting the admission of evidence of prior crimes. D.R.E. 404(b). This Court has recently noted that the ambiguous formulation of D.R.E. 404(b)—the statement of the prohibition followed by a catalog of exceptions—has raised questions about whether the rule should be interpreted in an exclusionary or an inclusionary way. *Getz v. State*, 538 A.2d at 730. Under the exclusionary approach, evidence of prior criminal acts would not be admissible unless it fits within the finite list of recognized exceptions provided for in D.R.E. 404(b). *Getz v. State*, 538 A.2d at 730. Conversely, under the inclusionary approach, the proponent is allowed to offer evidence of prior criminal misconduct for any material purpose other than to show a mere propensity or disposition on the part of the defendant to commit the charged crime. *Id.* In *Getz*, this Court adopted an inclusionary construction of D.R.E. 404(b). *Id.* at 730–31.

In *Getz*, we held that "evidence of prior misconduct is admissible when it has 'independent logical relevance' and when its probative value is not substantially outweighed by the danger of unfair prejudice." *Id.* at 730. Independent logical relevance means that the "evidence of other crimes must be material to an issue or ultimate fact in dispute in the case." *Id.* at 734. If the evidence of prior misconduct meets these standards, it is admissible whether or not it may be "pigeonholed" into one of the categories specifically identified in D.R.E. 404(b). *Id.* at 731.

In the present case, we are called upon to consider the appropriateness of recognizing the admissibility of Weber's statements to Long under a theory that is not specifically identified in the catalog of exceptions set forth in D.R.E. 404(b). In this case, the basis for the charges of intimidation against Weber includes his claim that he had engaged in prior criminal activity. Therefore, it presents a situation where the defendant has made his prior criminal activity—whether or not he actually engaged in such criminal activity—an element of the crime for which he is being charged. The Pennsylvania Supreme Court was presented with a similar situation in *Common-*

---

**5.** As we noted in a portion of this opinion, Weber was convicted of second degree murder, but the conviction was reversed on appeal.

*Weber v. State*, Del.Supr., 457 A.2d 674, 688 (1983). On retrial, Weber was acquitted.

*wealth v. Claypool,* 495 A.2d 176, 177–80 (Pa.1985).

Weber's statements to Long are not only material, but also constitute an element of the charge against him. As the *Claypool* court noted, "[ ]if such evidence were not admissible, a criminal would only need to make sure that the fear needed for the commission of his crime emanated from a threat which only embodied a claim of prior criminal activity" in order to successfully avoid prosecution. *Id.* at 179. Such a result is inconsistent with an inclusionary interpretation of D.R.E. 404(b). Therefore, this Court holds that "when there is evidence that a statement about prior criminal activity was made by the defendant in order to threaten and intimidate his victim, and when force or threat of harm is an element of the crime for which the defendant is being tried, such evidence is admissible." *Id.* (footnote omitted).

In applying this holding to the facts of this case, we find that Weber's statements to Long and Skidmore were properly admissible into evidence under Rule 404(b). To obtain a conviction for intimidation and aggravated intimidation, the State had to show that Weber acted knowingly and with malice. Malice is defined as "an intent to vex, annoy, harm or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." 11 *Del. C.* § 3531(1). In addition, Weber was charged, in the context of the aggravated intimidation count, with making an express threat of force or violence against Long. 11 *Del. C.* § 3533(1). Weber's statements to Long and Skidmore that he had killed before and that he had bribed a judge were not being admitted to show a criminal disposition on his part or even that he had, in fact, committed a prior criminal act. Indeed, Weber's allegation of bribery was completely untrue. However, these statements were admissible because they were made as a part of the threats communicated by Weber to Long. These statements constituted the act of intimidation that was an element of the offenses with which Weber was charged.

Nevertheless, our analysis cannot end with the conclusion that evidence of prior criminal acts, which Weber himself made relevant to prove the crimes with which he is charged, is admissible. There is a grave potential for misunderstanding on the part of the jury when this type of evidence is admitted. *See Commonwealth v. Claypool,* 495 A.2d at 179. This evidence of prior criminal acts cannot be submitted to the jury without guidance from the trial court. Therefore, when such evidence is admitted, it "must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." *Id. Cf. Getz v. State,* 538 A.2d at 734 & n. 8. In this case, the admission of the evidence of Weber's statements concerning his prior activities was not accompanied by such a cautionary instruction. Since such an instruction was necessary for a proper understanding of the evidence by the jury and to assure a fair trial, the failure to give such an instruction was reversible error. *Cf. Scott v. State,* Del. Supr., 521 A.2d 235, 241–42 (1987). *Cf. Getz v. State,* 538 A.2d at 734.

Weber has also raised a separate issue about the admissibility of a separate reference to his prior conduct. Weber argues that the fairness of his trial was compromised when one witness made a direct reference to a prior trial and when two witnesses made indirect references to a prior trial. This Court has recognized that juror knowledge of a defendant's prior trial and conviction for the *same* charge that is before the jury for consideration is highly prejudicial and generally requires the declaration of a mistrial or the reversal of a conviction. *Bailey v. State,* Del.Supr., 521 A.2d 1069, 1076–78 (1987); *Hughes v. State,* Del.Supr., 490 A.2d 1034, 1044–48 (1985). The prior trial which was mentioned in this case related to a different charge than the one that was before the jury.

We have recognized an exception to D.R.E. 404(b) when there is a subsequent trial for a criminal charge based upon the defendant's own reference to his prior criminal activity or conviction. This exception

makes the disclosure of the prior activity and possibly the prior conviction inevitable. Therefore, in the context of the second unrelated trial, the trial judge's instruction that outlines the limited purpose for which the prior criminal activity or conviction is admitted is mandatory. *Cf.* D.R.E. 105.[6] In this case, although the trial judge did not give a limiting instruction, he was assiduous in his efforts to limit any reference to Weber's prior criminal activity to Weber's own words. We have found that such a limiting instruction is mandatory. We also note, however, that a limiting instruction can never be a substitute for the type of diligence that the trial judge displayed in Weber's case. Under the circumstances of this case, even though Weber's prior criminal acts were admissible, in the absence of a limiting instruction, Weber's convictions for intimidation and aggravated intimidation must be reversed.

### No Evidence of Kidnapping

■ As a result of the February incident in Long's home, Weber was indicted and convicted of first degree kidnapping by "unlawfully restrain[ing] Long for the purpose of terrorizing her" in violation of 11 *Del. C.* § 783A(5). The word "restrain" is specifically defined in the kidnapping context by 11 *Del. C.* § 786(a) as follows:

"Restrain" means to restrict another person's movements intentionally in such a manner as to interfere substantially with his liberty by moving him from 1 place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation or deception....

11 *Del. C.* § 786(a). This Court has interpreted the term "restrain" as it used in Section 786(a) as having three elements: "(1) substantial interference with another's liberty; (2) by movement or confinement;

(3) without consent." *Burton v. State,* Del.Supr., 426 A.2d 829, 832 (1981).

Weber argues that it is unjust and unlawful to convict and punish him for both assault and kidnapping under the facts of this case. Specifically, Weber argues that his conviction for kidnapping Long must be reversed because the restraint involved in the kidnapping was entirely incidental to his assault of Long. The question Weber presents, i.e., whether the kidnapping charge can be separated from an underlying offense, has been addressed by this Court before. *Burton v. State,* 426 A.2d at 833; *Scott v. State,* Del.Supr., 521 A.2d 235, 242–43 (1987). It has also been addressed in many other jurisdictions. *See* Annotation, *Seizure or Detention for Purpose of Committing Rape, Robbery, or Similar Offense as Constituting Separate Crime of Kidnapping,* 43 A.L.R.3d 699 (1972). This Court decided to hear Weber's case *en banc* for the purpose of explaining and extending our holdings in *Burton* and *Scott.*

The commentary to Section 783 in the Delaware Criminal Code of 1973 provides:

It should be noted, however, that a person is not guilty of kidnapping under subsection (4) every time he commits the crime of rape or assault. Both of those crimes inevitably involve some restraint of the person. but *much more* is required here before the additional and aggravated offense of kidnapping is committed. The State must prove that the restraint *interfered substantially* with the victim's liberty. Such a requirement means that there must be more interference *than is ordinarily incident to the underlying offense.*

*Delaware Criminal Code with Commentary* § 783 commentary at 228 (1973) (emphasis added) (footnote omitted). The commentary notes that a person is not guilty of kidnapping every time he commits the crime of rape or assault. *Id.* The commentary observes that although some restraint is involved in every rape and as-

---

**6.** This is consistent with the requirement that when evidence of a prior felony conviction is admitted to impeach a defendant's credibility, it must be accompanied by a limiting instruction. *See* Delaware Criminal Code Pattern Jury Instructions 24W (1974).

sault, the use of the word "substantially" in Section 783 means that there must be *much more* interference than is ordinarily incident to the underlying offense to support a conviction for the independent offense of kidnapping. *Id.*

The commentary to the Delaware kidnapping statute was cited with approval by this Court in *Burton* when the term "substantial interference" was construed by this Court to be a limitation within the statutory framework of kidnapping. *Burton v. State,* 426 A.2d at 833–36. *Cf. Commonwealth v. Hughes,* 399 A.2d 694, 696 (Pa.Super.Ct.1979). In *Burton,* this Court held that "the requirement that the defendant 'interfere substantially' with the victim's liberty insures that where the movement or restraint is *entirely incident* to the underlying crime, there cannot be a kidnapping conviction" under 11 *Del. C.* § 783A. *Burton v. State,* 426 A.2d at 834 (emphasis added). Thus, in *Burton,* this Court held that in order to allow a conviction for kidnapping in conjunction with an underlying crime such as rape, robbery, or assault, the movement and/or restraint of the victim must be more than incidental to the underlying crime. *Id.*

The Delaware kidnapping statute was never intended to increase the penalty for an underlying crime by punishing restraints that were entirely incidental to that underlying crime. *See Burton v. State,* 426 A.2d at 834; *Scott v. State,* 521 A.2d at 242; *Delaware Criminal Code with Commentary* § 783 commentary at 227–28. To avoid such a result, the substantial interference (movement and/or restraint) which is required by the kidnapping statute must always be independent interference. Therefore, to sustain a conviction for kidnapping in conjunction with an underlying offense, the State must prove the underlying offense and substantial interference which is independent of and not incidental to that underlying offense. If the State's evidence does not prove the kidnapping charge by demonstrating substantial interference that is independent of the underlying offense, there can be no conviction for kidnapping. *Burton v. State,* 426 A.2d at 834; *Scott v. State,* 521 A.2d at 242; *Delaware Criminal Code with Commentary,* § 783 commentary at 228.

We find that confusion has been generated from efforts to define substantial interference—which is not incidental to the underlying crime for the purpose of the kidnapping statute—in linear or temporal terms. The use of linear or temporal definitions is not a satisfactory method for separately identifying the offense of kidnapping when the defendant is also charged with an underlying offense such as rape, robbery, or assault. Therefore, if a defendant is charged with both kidnapping and such an underlying crime, the degree of movement, the nature of the restraint, or the duration of the restraint should not be the primary focus of inquiry. *Cf. Commonwealth v. Hughes,* 399 A.2d at 697–98. When a defendant is charged with kidnapping in conjunction with an underlying crime such as rape, robbery, or assault, the dispositive issue is not the degree or duration of the movement and/or restraint, but whether the movement and/or restraint are *incident to* the underlying offense or are *independent of* the underlying offense.

Although the Court in *Burton* held that where the movement and/or restraint is entirely incident to the underlying crime there cannot be a kidnapping conviction, the Court did not require a specific jury instruction to that effect. *Burton,* 426 A.2d at 834. In *Burton,* the kidnapping occurred after the victim was first raped when her liberty was substantially interfered with by detaining her for the purpose of raping her again. *Id.* at 835. In *Burton,* we found no need for such a specific instruction to the jury because the record clearly supported a finding of substantial interference with the victim's liberty that was not incidental to the underlying crime. *Id.* However, the absence of such an instruction presented problems in other cases which focused on the degree of movement and/or restraint rather than the independence of those acts from the underlying crime.

■ Subsequent to *Burton*, this Court held that a specific instruction requiring the jury to find evidence of movement and/or restraint—that is not incidental to the underlying crime—to support an independent conviction for kidnapping may be desirable to assure the defendant a fair trial on both charges. *Scott v. State*, 521 A.2d at 242–43. We now hold that in every case when a defendant is charged with kidnapping in conjunction with an underlying crime, a specific instruction requiring the jury to find that the movement and/or restraint is independent of and not incidental to the underlying crime is mandatory.

Kidnapping is a serious offense. The legislature has provided a penalty for a kidnapping conviction which is commensurate to that offense. A conclusion that the victim was detained or moved independent of the underlying crime subjects the defendant to a life sentence for kidnapping in the first degree. 11 *Del. C.* § 783A; 11 *Del. C.* § 4205(b)(1). The trial judge must closely examine the facts in each case to insure that a kidnapping charge is not used to unjustly supplement an underlying offense so as to elevate it to a mandatory life sentence. *See Burton v. State*, 426 A.2d at 833. Both the kidnapping charge and the underlying charge should not be submitted to the jury unless the trial judge concludes that there are facts in the record which would support independent convictions on the kidnapping charge and on the underlying charge. The trial judge must determine, as a matter of law, if the evidence of restraint proves that there was "much more" (substantial) interference with the victims liberty than is ordinarily incident to the underlying crime. *Cf. Wilson v. State*, Del.Super., 500 A.2d 605, 609–10 (1985). In most situations which involve the underlying crime of rape, robbery, or assault, it is likely that there will not be independent evidence to support a separate conviction for kidnapping.[7] Therefore, we

also hold that before the jury is instructed to consider whether the movement and/or restraint in the alleged kidnapping is independent of or is incidental to an underlying crime, the trial judge must determine if the facts presented in the State's case warrant the submission of that issue to the jury at all.

■ In this case, Weber requested the trial judge to make an independent evaluation of the facts presented when he moved for a directed verdict on the kidnapping charge. Weber argues that the only restraint proved by the State's evidence was entirely incidental to the underlying charge of assault. The record shows that Weber's assault on Long took place throughout several rooms in her home. The State admits that the movement from room to room was entirely incidental to the assault. We agree. However, the State argues that Weber committed the crime of kidnapping by substantially interfering with Long's liberty when he prevented Long from reaching the door of her home on several occasions during the course of the fight.[8]

The record in this case demonstrates the inadequacy of a linear or a temporal definition of substantial interference when an underlying charge is accompanied by a kidnapping charge. Long testified that she and Weber were fighting continuously from the time the assault began until Weber became sick and regurgitated. The fight between Long and Weber progressed throughout the first floor of Long's home over a significant period of time. Nevertheless, all of Weber's efforts to restrain Long were entirely incident to and not independent of the fight with Long. There is no evidence independent of Weber's assault on Long to support a separate conviction for kidnapping. Therefore, Weber's motion for a directed verdict on the charge of

---

7. If the trial judge finds that it is appropriate to submit the kidnapping charge and the underlying charge to the jury, the trial judge and counsel should also consider whether or not the jury should be instructed concerning the lesser included offense of unlawful imprisonment. *See* 11 *Del.C.* §§ 781–82.

8. The State does not contend that Long was kidnapped when she voluntarily re-entered her home and fought with Weber until he became tired.

kidnapping Long should have been granted.[9]

### Prosecutor's Closing Argument

■ Weber's final argument on appeal is that he was denied a fair trial because of the nature of the prosecutor's closing argument. Weber contends that the prosecutor argued to the jury in the first person and expressed his personal belief as to the credibility of some witnesses and as to Weber's guilt. In this appeal, the State has acknowledged that portions of the prosecutor's closing argument were improper because they were in the first person and contained expressions of the prosecutor's personal opinion about witness credibility and Weber's guilt. *See Brokenbrough v. State*, Del.Supr., 522 A.2d 851, 854–64 (1987) (per curiam). However, the State argues that its acknowledgement of the deficiencies in portions of the prosecutor's summation does not automatically require reversal of Weber's convictions. We agree. This Court has recently noted that a confession of error does not eliminate the need for an independent review of the record by this Court. *Weddington v. State*, Del.Supr., 545 A.2d 607, 612 (1988). The reversal of Weber's convictions is warranted only if this Court finds that the prosecutor's summation deprived Weber of a fair trial. *Michael v. State*, Del.Supr., 529 A.2d 752, 762–64 (1987); *Brokenbrough v. State*, 522 A.2d at 854–64.

The State also points out that Weber did not object to the prosecutor's summation at trial. This Court has held that the failure to make a contemporaneous objection generally constitutes a waiver of the right to raise that claim on appeal. *Michael v. State*, 529 A.2d at 762; Supr.Ct.R. 8. Therefore, given Weber's failure to object, we must examine the record of the prosecutor's closing argument according to a plain error standard.

■ This Court has adopted a three-prong test in determining whether the fairness of a trial was adversely affected by prosecutorial action. *Hughes v. State*, Del. Supr., 437 A.2d 559, 571 (1981) (en banc). This Court considers: (1) the centrality of the issue affected by the alleged error; (2) the closeness of the case; and (3) the steps taken to mitigate the effects of the alleged error. *Id.* Weber's failure to object to the prosecutor's summation vitiated any opportunity for appropriate corrective action by the trial judge. We have assumed *arguendo* that Weber's credibility and the credibility of the witnesses were central issues in his trial. Therefore, the determining factor in our plain error analysis must be the strength of the State's case against Weber.

The convictions which remain before this Court for review are: assault in the second degree, as a result of striking Long in the face with a gun in December 1984; menacing, as result of pointing a handgun at Plummer; assault in the third degree, as a result of the fight in Long's home in February 1985; burglary second degree, as a result of illegally entering Long's home for the purpose of assaulting her; and resisting arrest, as result of his refusal to leave Long's home after the assault. The State's evidence of all of these crimes was strong.

We find that substantial portions of the prosecutor's argument were improper. However, those improper remarks were generally made in the context of the kidnapping and intimidation charges against Weber that have been reversed on other grounds. We do not find plain error which resulted in denying Weber a fair trial on the remaining charges. Therefore, under the standards of the three-prong test adopted in *Hughes*, we are convinced beyond a reasonable doubt that Weber's right to a fair trial on those charges was not affected by the prosecutor's closing argument.

### Conclusion

A reversal of Weber's convictions for the reasons stated herein renders a ruling on his other claims of trial error unnecessary.

---

**9.** A directed verdict on the charge of kidnapping Skidmore and Long's son should have also been granted. However, that issue is moot since the jury acquitted Weber of those kidnapping charges.

Weber's conviction for first degree kidnapping is REVERSED and that charge is REMANDED for the purpose of entering a judgment of acquittal. Weber's convictions for intimidation and two counts of aggravated intimidation are REVERSED and REMANDED for a new trial. The judgments resulting in Weber's convictions and sentences for second degree burglary, second degree assault, menacing, third degree assault, and resisting arrest are AFFIRMED.

### On Motion for Reargument

This 16th day of September, 1988, the Court has before it a motion for reargument by the State. The motion contends that, because the terms of the kidnapping statute always require that there be restraint for a specific unlawful purpose, the State will never be able to prove that the restraint was both for the purpose of and independent of *the* underlying offense. In support of its position, the State also argues that Weber was not charged with restraining Long for the purpose of assaulting her under subsection (4) of the kidnapping statute but was charged under subsection (5) with restraining her for the purpose of terrorizing her.[10] The focus of the State's argument is upon the concept of restraint exclusively as it relates to the alleged unlawful purpose for which the restraint was committed. Such an approach is too narrow because a defendant may be charged with *an* underlying offense that is not *the* unlawful purpose for which the victim was being restrained.

The kidnapping statute has two requirements. The first requirement is restraint. 11 *Del.C.* §§ 783,[11] 783A. The second requirement is that the restraint be for one of the unlawful purposes specifically enumerated in the statute. *Id.* The Court's opinion in this case holds that "in every case when a defendant is charged with kidnapping in conjunction with *an* underlying crime, [not *the* underlying crime for which the restraint occurred] a specific instruction requiring the jury to find that the movement and/or restraint is independent of and not incidental to the underlying crime [that is also being charged] is mandatory." *ante,* at 959. *An* underlying crime may be charged either as the result of the restraint used to accomplish an unlawful purpose *or* as a result of the crime that constitutes the unlawful purpose for which the restraint was initiated.

The problem in examining the kidnapping statute by only focusing upon the unlawful purpose for which a person is restrained is highlighted by the fact that the unlawful purpose may never be accomplished. For example, a defendant may properly be convicted of kidnapping as a result of restraint or interference with the liberty of a victim for the purpose of committing a rape even though the rape never occurs. Therefore, in some situations, the failure to accomplish the unlawful purpose of the restraint may mean that there is no charge for the underlying crime that was intended or for any other crime. The *only* charge against the defendant may be for kidnapping. However, if a rape was accomplished and the defendant was also charged with kidnapping, a conviction for kidnapping "requires proof of substantial interference with the victim's liberty beyond the interference or restraint that is normally incident to a rape." *Burton v. State,* Del. Supr., 426 A.2d 829, 836 (1981).

---

**10.** 11 *Del.C.* § 783A provides:

783A. Kidnapping in the first degree; class A felony.

A person is guilty of kidnapping in the first degree when he unlawfully restrains another person with any of the following purposes:

(1) To hold him for ransom or reward; or

(2) To use him as a shield or hostage; or

(3) To facilitate the commission of any felony or flight thereafter; or

(4) To inflict physical injury upon him, or to violate or abuse him sexually; or

(5) To terrorize him or a third person; and the actor does not voluntarily release the victim alive, unharmed and in a safe place prior to trial.

Kidnapping in the first degree is a class A felony.

**11.** This section defines kidnapping in the second degree which is a class B felony. Second degree kidnapping is distinguished from first degree kidnapping in that the actor voluntarily releases the victim alive, unharmed and in a safe place prior to trial.

Moreover, just as the unlawful purpose of a restraint may or may not result in the defendant being charged with *the* underlying crime for which the kidnapping was committed, the restraint itself which is used to attempt to accomplish the unlawful purpose, may or may not result in the defendant being charged with *an* underlying crime. For example, every restraint does not involve an assault. Nevertheless, it is possible for a person to be assaulted, and in addition to the assault, to be kidnapped by being restrained for a separate unlawful purpose. Such a situation would occur, for example, if a person was assaulted and thereafter restrained in a building for ransom or as a hostage. 11 *Del.C.* § 783(1), (2).

There is no doubt that a continuum of criminal activity can constitute a violation of several distinct criminal statutes if each statutory provision requires proof of a fact that the other does not. *Burton*, 426 A.2d at 836. In this case, Weber's continuum of criminal activity at Long's house resulted in separate convictions for burglary, assault, and resisting arrest. That activity may also result in Weber's conviction for intimidation following a new trial. However, this Court concluded that there was no basis to separately convict Weber for kidnapping Long.

*Burton* specifically addressed situations when the State charges a defendant with kidnapping and *an* underlying offense. *Burton* held that to avoid the constitutional guarantees against double punishment for the same offense, the State must be able to identify and prove a fact or circumstance that is not incident to an underlying crime that is also charged for there also to be a conviction for kidnapping. *Burton v. State*, 426 A.2d at 836. Thus, to sustain a separate conviction for kidnapping in this case, the State was required to prove substantial interference with Long's liberty that was not normally incident to an underlying crime (assault) with which Weber was also being charged. To the extent that the term "independent" has been used in this opinion, it is synonomous with the term "substantial interference beyond the interference that is normally incident to" an underlying crime, as that phrase is used in *Burton.* 426 A.2d at 836.

The indictment charged that Weber did not just assault Long but that he *also* kidnapped her by restraining her for the purpose of terrorizing her. To prevail on both counts of the indictment, the State was required to prove that Weber's restraint of Long was a substantial interference with her liberty that was not incident to the assault, i.e., there was restraint independent of, in the sense that it was in addition to or beyond, the restraint in *an* underlying crime (assault) with which Weber was also charged. This Court found that all of the evidence of restraint in the record was incident to the assault. Therefore, the record did not support *separate* convictions for assault and kidnapping.

The motion for reargument also raises questions about this Court's reversal of Weber's conviction for intimidation due to the absence of a jury instruction limiting the scope of the use of evidence of other crimes. This Court recently held that it is an abuse of discretion for a trial court to admit evidence of other crimes without regard to the balancing test required under D.R.E. 403. *Getz v. State*, Del.Supr., 538 A.2d 726, 734 (1988). In *Getz*, this Court also set forth guidelines to govern the admissibility of such evidence. One of those guidelines is that "because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105." *Id.*

When evidence is admitted for a limited purpose, D.R.E. 105 generally provides that "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." However, the danger of unfair prejudice that is inherent when evidence of prior crimes is presented to a jury requires more than the balancing test of D.R.E. 403. The cautionary instruction required as one of the guidelines in *Getz*, which conditioned the admissibility of other crimes evidence, assumes greater significance when, as here, the evidence of other crimes is inevitably admitted. The trial court must perform the balancing test

required under D.R.E. 403, *and* if it finds that the evidence of other crimes is admissible, must restrict the evidence to its proper scope by instructing the jury accordingly. *See Getz v. State,* 538 A.2d at 734. Thus, due process requires that whenever evidence of other crimes is admitted, the requirements of D.R.E. 105 must be expanded to make a limiting instruction mandatory. *Id.;* Del. Const. art. I, § 7.[12] However, when evidence which does not involve other crimes is admitted for a limited purpose, an instruction to the jury restricting the evidence to its proper scope need only be given upon request. D.R.E. 105.

The motion for reargument is DENIED.

---

**12.** "The phrase 'due process of law' in the federal Constitution and the phrase 'law of the land,' as used in the State Constitution have substantially the same meaning." *Goddard v. State,* Del.Supr., 382 A.2d 238, 240, n. 4 (1977) (citing *Opinion of the Justices,* Del.Supr., 246 A.2d 90 (1968)).