IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RASHAD GOODMAN, | § | |
| | § | |
| Defendant-Below, | § | No. 347, 2019 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: |
| | § | Superior Court |
| STATE OF DELAWARE, | § | of the State of Delaware |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | C.A. No. 1807009539 (N) |

Submitted: February 12, 2020
Decided: March 4, 2020

Before **VALIHURA**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## **O R D E R**

This 4th day of March 2020, upon consideration of the briefs of the parties and the record below, it appears to the Court that:

(1) On September 24, 2018, Defendant-Below, Appellant Rashad Goodman ("Goodman") was indicted for Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Carrying a Concealed Deadly Weapon, and Misdemeanor Criminal Mischief. A bench trial was held on January 29, January 30, and March 11, 2019. At the conclusion of the trial, the Superior Court found Goodman guilty of all charges, except for the Criminal Mischief charge which the State dropped. The court sentenced Goodman to a total of thirty-one years at Level V incarceration, suspended after ten years followed by probation. On appeal, Goodman argues that the trial judge's failure to recuse himself, *sua sponte*, constituted plain error. We disagree and AFFIRM.

(2) On July 13, 2018, law enforcement conducted surveillance of Goodman at a motel located off of Route 9 in New Castle, Delaware. Detectives surveyed the scene and reported their observations over the radio. Detective Kashner of the Newport Police Department positioned himself across the street from the motel while Detective Landis of the New Castle County Police Department watched from a bridge that spans Interstate 295. Both detectives witnessed Goodman walk back and forth throughout the motel complex carrying a black bag. During the course of the surveillance, the detectives noticed periods of time when Goodman had possession of the bag, and periods when he did not.

(3) As Goodman walked about, Detective Landis witnessed him conduct a "weapons check," which the State defines as a movement consistent with someone carrying a concealed weapon. Detective Kashner watched as Goodman carried the bag to the back of the complex, out of Detective Kashner's view. Goodman then returned from a wooded area without the bag. Detective Landis also observed Goodman coming from the rear area of the complex near the wood line. When Detective Landis approached Goodman, he noticed that Goodman was "breathing heav[ily]" and "sweating profusely, which really stood out because it wasn't really that hot that day."[1]

(4) After detaining Goodman, the detectives found the black bag near the wood line behind the motel. Inside the bag, the detectives found a holstered firearm loaded with 13 rounds of ammunition and an extended magazine loaded with 21 rounds of ammunition. Following testing, DNA evidence revealed that a swab from the barrel of the firearm

---

[1] App. to Appellant's Opening Brief ("A") at A44.

produced a single source DNA profile that matched the known DNA of Goodman. Another swab from the grip of the firearm produced a mixed DNA profile consistent with being from two individuals, at least one of whom was male. Based on those results, the State could not include or exclude Goodman as the source of that sample.

(5) On September 24, 2018, the New Castle County grand jury indicted Goodman for Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Carrying a Concealed Deadly Weapon, and the Criminal Mischief charge that the State later dropped. Goodman's bench trial commenced on January 29, 2019. On the morning of the second day of his bench trial, Goodman informed his counsel, a representative of the Office of Defense Services ("ODS"), about a potential witness. Upon learning that another lawyer from ODS represented the witness in another matter, Goodman's counsel moved to withdraw, claiming that there was a conflict of interest. When questioned by the judge, Goodman's counsel revealed that the police responded to a shooting at the motel the day that the police arrested Goodman, that Goodman is the suspect in that matter, and that he "can't represent Mr. Goodman if [the witness] is his victim."[2] The trial court did not immediately rule on the oral motion. The judge directed the State to complete its case-in-chief and advised the parties that there would be a long recess to permit formal written applications as to whether there was a need for defense counsel to withdraw.

---

[2] App. to State's Answering Brief ("B") at B18.

3

(6)     Defense counsel thereafter filed a motion to withdraw.  In response, the State filed a reply.  The State submitted the following facts:

> On July 13, 2018, a shooting occurred at the Best Night Inn motel in New Castle County, Delaware.  The victim of the shooting was identified as Sirrone Deshields.  The shooting investigation is currently ongoing and no arrests have been made regarding this incident . . . . That same day, at the same location, the Defendant Rashad Goodman was arrested for Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, and Carrying a Concealed Deadly Weapon . . . . The State made Defense counsel aware of a statement made by Mr. Deshields which identifies the Defendant Goodman as the individual who shot him while in the hotel room.[3]

On February 21, 2019, the court held a hearing to address the issue.  At that point, the witness had been appointed other conflict counsel.[4]  The court then denied the motion to withdraw, finding that no conflict of representation existed.[5]

(7)     This Court generally declines to review contentions that have not been raised below or fairly presented to the trial court.[6]  However, there is an exception to this general rule when the Court finds that the trial court committed plain error.[7]  Under the doctrine of plain error, the Court is "limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[8]  Under

---

[3] A120–A122.

[4] During the hearing, the court stated that, "[t]he fact that [the witness] has now been given separate counsel takes care of any potential issue that we might have had up to this point."  A158.

[5] A159–A160, A165–A166.

[6] *Turner v. State*, 5 A.3d 612, 615 (Del. 2010).

[7] Supr. Ct. R. 8; *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995).

[8] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

4

this standard of review, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[9]

(8)    As this Court stated in *Los v. Los*, "[t]he requirement that judges be impartial is a fundamental principle of the administration of justice." [10]  As a matter of due process, a litigant is entitled to neutrality on the part of the presiding judge, but the standards governing disqualifications also require the appearance of impartiality.[11]

(9)    When faced with a claim of personal bias or prejudice and a request for recusal, a judge must engage in a two-part analysis as set forth in *Los*.[12]  First, as a matter of subjective belief, the judge must be satisfied that she can hear and rule on the matter free of bias or prejudice concerning that party.  This part of the *Los* analysis does not apply in this case because Goodman never raised the issue of recusal during trial.[13]  Second, even if the judge believes she has no bias, we must determine whether there is an appearance of bias sufficient to cause doubt as to the judge's impartiality.  This is true regardless of any actual bias.  "Under the second prong of the *Los* test, we review the merits of the issue objectively and determine whether there is an appearance of bias sufficient to cause doubt about the judge's impartiality."[14]  Goodman's appeal rests on his contention that the trial

---

[9] *Id.* (*citing Dutton v. State*, 452 A.2d 127, 146 (Del. 1982)).

[10] 595 A.2d 381, 383 (Del. 1991).

[11] *Id.*

[12] *Id.* at 384–85.

[13] Goodman agrees and states in his Opening Brief on appeal that, "there was no motion to recuse filed and there is nothing in the record to indicate any actual bias on the part of the trier of fact," and that, "[t]hus, there is no need to address the first prong of the *Los* test."  Opening Br. at 2.

[14] *Watson v. State*, 934 A.2d 901, 906 (Del. 2007).

judge's knowledge of inadmissible evidence demonstrates the appearance of bias sufficient to cause doubt as to impartiality. Based on the record before us, we reject his claim of plain error.

(10) Goodman contends that because the State revealed to the Superior Court that it suspected him of shooting someone the same day that he was arrested, it ultimately exposed the trier of fact to highly prejudicial evidence. He argues that the exposure establishes the appearance of bias sufficient to cause doubt as to the judge's impartiality, and that the judge's failure to recuse himself *sua sponte* constitutes plain error. He maintains that as a result of this error, his conviction must be overturned. In support, Goodman cites *Watson v. State*, where this Court reversed and remanded for a new trial on the basis of the trial judge's appearance of bias.[15] However, as the State correctly points out, *Watson* is distinguishable.

(11) In *Watson*, the defendant faced two separate trials for different crimes. After the first trial, the judge convicted the defendant of Robbery in the Second Degree and Assault in the Third Degree. Then, only ten minutes later, that same judge presided over the defendant's second trial and convicted him of two counts of Rape in the Second Degree, despite the defendant's motion for a continuance to argue the case before another judge. In denying the motion, the trial judge stated that he believed he "would be capable of 'starting fresh' on matters of [the defendant's] credibility."[16] The Court found that even

---

[15] *Id.* at 907–08.

[16] *Id.* at 905.

though the judge satisfied the first prong of *Los* by claiming impartiality, there was an appearance of bias sufficient to cause doubt. Specifically, it found that "[o]nly ten minutes after finding that Watson's testimony was not worthy of belief in an earlier trial, the Family Court judge had to assess Watson's credibility anew in a trial on unrelated charges where a credibility assessment inevitably determined the outcome."[17] In *Watson*, this Court contrasted the situation with that in *Weber v. State*,[18] where this Court found that there was no appearance of bias when a trial judge had entered an adverse ruling against the defendant several years earlier and, by the time of the new proceedings, barely remembered the earlier case.

(12) The State contends that this matter is factually distinct from *Watson*, as there was no "stigma surrounding the appearance of an inability to assess credibility" here, and the state never presented any evidence or details beyond the allegation that the State suspected Goodman of shooting a witness.[19] In fact, during Goodman's sentencing hearing, the State requested that the judge consider the fact that a witness identified Goodman as his shooter. The Superior Court declined, stating:

> I don't believe the State's proffer here meets the standard so I'm not considering what may have happened in that hotel room, what the State's allegations were. Like I said, if they wish for Mr. Goodman to be punished

---

[17] *Id.* at 907.

[18] 547 A.2d 948 (Del. 1988). In *Weber*, the Court stated that, "the bias envisioned by Canon 3C(1) [of the Delaware Code of Judicial Conduct] is not created merely because the trial judge has learned facts or made adverse rulings during the course of a trial." *Id.* at 952 (citing *Steigler v. State*, 277 A.2d 662, 668 (1971)).

[19] Answering Br. at 14–15.

7

for that, then they've got to present some evidence, and this is lacking . . . . I'm not considering it.[20]

The court also commented that the State did not agree or believe the witness [Deshields] had enough credibility to charge Goodman with a shooting.[21]

(13)    We agree with the State that there was no appearance of bias. The record does not support Goodman's contention that the trial judge's impartiality was called into question. Even though the State had informed the judge of its suspicions about Goodman's involvement in a shooting, the court's statements demonstrate that the trial judge was fully capable of differentiating and disregarding the allegedly prejudicial evidence. There is no basis in the record to suggest otherwise. Because we find there was no appearance of bias here sufficient to cause doubt as to the judge's impartiality, recusal was not required. Accordingly, there was no plain error.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:


*/s/ Karen L. Valihura*
Justice

---

[20] B32 (Sentencing Tr.).

[21] B29.