IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAKIIM STRICKLAND, | § | |
| | § | No. 321, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID No.  2206015863 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted:  July 24, 2024
Decided:  October 2, 2024

Before **VALIHURA, TRAYNOR,** and **GRIFFITHS,** Justices.

Upon appeal from the Superior Court of the State of Delaware.  **AFFIRMED.**

Nicole M. Walker, Esquire, Wilmington, Delaware, *for Appellant Rakiim Strickland*.

John Williams, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Dover, Delaware, *for Appellee State of Delaware*.

**TRAYNOR**, Justice:

The Dover Housing Authority operates a surveillance-video recording system in the vicinity of housing units it manages in the Senate View section of the Dover neighborhood known as Capitol Green. Two of the system's cameras captured an individual—later identified as Rakiim Strickland—in possession of an assault weapon, and one recorded the weapon being discharged in the direction of another person. Strickland was a convicted felon and, as such, was prohibited from possessing a firearm. Consequently, Strickland was charged with possession of a firearm and ammunition by a person prohibited; he was not charged with any offenses related to the discharge of the weapon.

At Strickland's trial, which resulted in his conviction and a 35-year prison sentence, the State played, and the jury watched, the two video clips. Strickland neither objected to the admission of the video clips nor requested a jury instruction concerning the purposes for which the jury could consider them. But Strickland now claims that the trial judge should have *sua sponte*—that is, of her own accord without prompting or suggestion—instructed the jury that it could only consider what Strickland calls the "shooting evidence" for the limited purposes of identifying the person in possession of the firearm. According to Strickland, that the jury might, in the absence of the instruction Strickland did not request, consider it for other,

2

improper purposes, was so clearly prejudicial to Strickland's rights as to require the reversal of his convictions.

Strickland points to a second reason why his convictions should not stand. He claims that the trial court abused its discretion when it permitted the prosecution to introduce evidence of two firearm-related convictions of a defense witness. Strickland readily concedes that another firearm-related conviction on the witness's record—theft of a firearm—was admissible because it was a crime involving dishonesty. But because the two other convictions, in Strickland's telling, did not involve crimes of dishonesty, the trial court was required to, but did not properly, balance the probative value and prejudicial effect of the evidence of those convictions.

As we will develop more fully below, neither of Strickland's claims of reversible error has merit. In short, the video evidence was admissible without reference to the evidentiary rule governing other, uncharged bad acts, because the evidence directly proved the charged possessory offense. And in the face of Strickland's failure to request a limiting instruction to ensure that the jury did not improperly consider the evidence, the trial court's failure to so instruct the jury was not plainly erroneous. In addition, Strickland's argument concerning the witness's prior convictions is grounded in a questionable, even if not implausible, characterization of the trial judge's ruling. And even if we were to accept that

3

characterization, any error associated with the admission of the convictions was harmless. We therefore affirm Strickland's convictions.

I

A

At 6:18 p.m. on June 22, 2022, an evening with heavy rainfall, a 911 call came in to the Dover Police Department ("DPD"), reporting shots fired near 409 Kent Avenue, a single-story residence in Dover's Capitol Green neighborhood. According to the caller, someone with "dreads in his hair" driving a white Nissan Altima with temporary tags was shooting a gun near a residence.[1] DPD broadcast the incident, alerting officers that "a white passenger vehicle . . . fired shots outside the vehicle"[2]

At 6:20 p.m., DPD Corporal Cliff Figueroa was on duty in a patrol vehicle heading eastbound on Martin Luther King Jr. Boulevard, which forms Capitol Green's northern border. Corporal Figueroa saw a small white passenger vehicle pass on his right-hand side. About "a minute"[3] later, Corporal Figueroa heard the "shots fired" broadcast and "that's when [he] activated [his] lights and started . . . towards the vehicle."[4] The heavy rainfall caused the corporal to briefly lose control of his vehicle, but he saw the white car start to pick up speed and weave in and out

---

[1] App. to Answering Br. at B3. *See also* State's Ex. 4 (911 call log) at 2 ("whi altima t tags driver has dreds shooting cap green").
[2] App. to Opening Br. at A13; App. to Answering Br. at B10.
[3] App. to Answering Br. at B8.
[4] App. to Opening Br. at A15.

of traffic. Corporal Figueroa testified that the car turned right onto River Road and into Capitol Green traveling at a high rate of speed and then turning down a small, paved road near some apartments. The officer caught up in time to see the driver, a black male wearing a white shirt, possibly a tank top, and shorts with dreads or braids in his hair, jump out and run towards a six-foot fence. The car, which the driver had abandoned in motion, came to a rolling stop in nearby bushes.

Corporal Figueroa checked the vehicle for other occupants and then with other officers "started setting up a perimeter on River Road. . . ."[5] Another DPD officer, Maria Ragona, reported to the scene. Ragona checked the Altima for firearms and located a black bookbag in the rear passenger seat, and in that she found Strickland's driver's license and health insurance card. Ragona advised all DPD units of the address on Strickland's license: 634 River Road. Sergeant Michael Wilson was also on duty that evening. He was familiar with Strickland, and he reported to the River Road residence to help set a perimeter around Strickland's residence. Strickland's grandmother emerged from the residence and told Wilson and the other responding officers that Strickland was in the shower. Strickland came outside five to ten minutes later. Officers obtained a search warrant for the residence and located a wet white tank top and muddy black Nike sneakers from a bedroom.

---

[5] *Id.* at A23.

Detective Jordon Barrows later canvassed Kent Avenue for evidence. He located .300 blackout shell casings associated with an AR rifle or pistol, which were entered into evidence at trial. The detective also contacted the Dover Housing Authority and obtained surveillance-camera footage from the commons area in the Capitol Green.

B

Two aspects of Strickland's trial provide the grist for his appellate claims: the surveillance-camera footage and the cross-examination of the only witness called by the defense.

(i)

During the prosecution's case-in-chief, the surveillance-camera footage was entered into evidence and played for the jury. As the video was played and periodically paused, Detective Barrows explained the footage—without objection—from the witness stand. He testified that the footage showed "an individual who appears to be Mr. Strickland . . . exit a residence on New Castle Avenue carrying a black bookbag and enter[ing] the white Nissan Altima[.]"[6] The video, timestamped 6:21 p.m., next showed "a white Nissan Altima with what appears to be a temporary white registration on the back heading eastbound through the alleyway from River

---

[6] App. to Answering Br. at B23.

6

Road."[7]   At 6:22 p.m., according to Detective Barrows, the footage showed the driver exiting "the driver's side door of the Nissan Altima . . . brandishing, holding down to his side, what appears to be an AR style either pistol or rifle while facing toward 409/411 Kent Ave."[8]   A video of the incident from another angle showed the Altima at 6:23 p.m. with the suspect displaying "an AR platform style rifle or pistol, h[olding] it out of the driver's side window and appear[ing] to discharge it twice."[9]

(ii)

Taron Walker, who lived in the Capitol Green neighborhood at the time of the incident, testified for the defense.  Walker testified that he and Strickland "grew up together"[10] and had mutual friends.  He told the jury that he was speaking to Strickland on June 22nd when "shots rang out," which caused him to duck and run towards his home located at 411 Kent Avenue.[11]   Walker did not see Strickland leave, but "assume[d] [Strickland] sped off because [he] heard the engine of his car rev."[12]   Walker also testified that he did not see any bullets, a weapon, or anyone who looked like they had a weapon in the area.[13]

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at B24.  Barrows clarified at trial that the time stamps on the Dover Housing Authority's videos were off by about five minutes.
[10] *Id.* at B26.
[11] *Id.*
[12] *Id.*  The video does show another person, but the Altima driver appears to shoot *at* that individual, who ducks for cover before briefly running into a residence.  He then runs quickly back out, jumps into his car, and drives off.
[13] *Id.*

7

On direct examination, Strickland's counsel asked Walker if he had ever been convicted of a crime, incarcerated, or on probation, to which he answered yes.[14] Before cross examination, the State made an application to the court under Rule 609 to permit the State to ask Walker about three felony convictions. Because it is critical to Strickland's appeal, the colloquy between the parties' counsel and the Court regarding Rule 609 is set forth in full:

The State: So as alluded to somewhat indirectly during direct examination, Mr. Walker was convicted on September 12 of 2018, in the United States District Court for the District of Delaware with the following three offenses: Stealing firearms from a federally-licensed firearms dealer, conspiracy to steal firearms from a federally-licensed firearms dealer, and felon in possession of a firearm.

Now, the first of those offenses under Rule 609(a)(2) because it involves theft of firearms is not subject to a balancing test because it did involve a crime of dishonesty, mainly theft.

The other two offenses, to the extent that inchoate defenses of conspiracy would be separately not a crime of dishonesty, both of them are subject to the balancing test under Rule 609(a)(1).

The State's position is that the probative value does outweigh the prejudicial effect of admitting this testimony or information. The State proposes to ask the witness about it, and if he admits to those convictions, simply to leave it at that without the necessity of introducing the record.

---

[14] *Id.*

8

However, the State does have a record I can provide to the Court. I would give the caveat that under normal circumstances the State would be presenting this as a certified record from the United States District Court. Under the circumstances this record is from PACER, which is the U.S. court's online docketing system, and under the circumstances, the State would ask if it is necessary to admit that and to – that the Court accept that, taking judicial notice of its authenticity. But that is the State's application under Rule 609.

Defense Counsel: Defense does not object to that application.

The Court: What about with regarding to . . . the criminal record?

Defense Counsel: As Mr. Smith has said, the first one because it is considered a crime of dishonesty is admissible. I would argue that the prejudicial effect of the admitting the other two . . . outweighs the probative value of the evidence, and I would ask that those two be excluded.

The Court: All right. And to the extent that the Court would allow Mr. Smith to ask Mr. Walker about these offenses, what is your position on the record that Mr. Smith is in possession of with regarding to the authenticity issue?

Defense Counsel: This is an authentic record. I would attest to its authenticity.

The Court: So you'll stipulate to the authenticity? Is that the defense's position?

Defense Counsel: Yes, Your Honor.

The Court: All right. The Court finds that based on at least what sounds like a partial concession by the defense that the probative value in light of the witness' testimony does outweigh any prejudicial effect doing the balancing test, at least for two of the three

9

offenses, and the State would be permitted to ask Mr. Walker about those offenses from 2018.[15]

The defense did not object to or contest the court's statement that it had "made a partial concession[.]" But when the State cross-examined Walker and asked about his felony convictions, Strickland's counsel reiterated her earlier objections:

Defense Counsel: I object to bringing in all three of the offenses. As we discussed before, we could bring in the one that constituted a crime of dishonesty, but the other two were not crimes of dishonesty, and I would argue that those should not be brought in.

The State: Your Honor, I have no objection to Ms. Gray because they're in the record, but I understand the court's ruling that you engaged in the balancing test for the other two felonies and found that the probative value outweighed the prejudicial effect.

The Court: That is the Court's ruling, Ms. Gray and Mr. Smith can inquire about those three offenses.[16]

The State continued its cross examination and briefly asked Walker about the three offenses. The jury was only informed of what the convictions were and the relevant dates.

The jury found Strickland guilty of both PFBPP and PFABPP, and he was sentenced as a habitual offender to 60 years at Level V incarceration, suspended after 35 years, followed by two years of decreasing levels of supervision. Strickland appealed.

---

[15] *Id.* at B27–28.
[16] App. to Opening Br. at A76–77.

B

Strickland raises two issues in this appeal. He first contends that the Superior Court erred by failing to instruct the jury *sua sponte* that the only purpose for which the jury should consider the surveillance-video "shooting evidence"—that is, the clip showing the firing of the weapon—was to determine whether Strickland possessed a firearm and not whether he might, by virtue of his discharge of the weapon, be guilty of other crimes. Strickland also argues that the Superior Court abused its discretion by permitting the State to cross-examine the sole defense witness, Taron Walker, about two felony-firearms convictions that, he argues, did not involve dishonesty.

II

A

Because Strickland did not request a jury instruction limiting the purposes for which the jury could consider the video evidence, we review the Superior Court's failure to so instruct the jury *sua sponte* for plain error.[17] An error is plain when it is "so clearly prejudicial to [a defendant's] substantial rights as to jeopardize the very fairness and integrity of the trial process."[18] Plain-error review is limited to material defects that are "apparent on the face of the record; . . . basic, serious and

---

[17] *Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011).
[18] *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982).

fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[19]

The gravamen of Strickland's claim is that, because the video evidence depicted the driver of the white car discharging a weapon in proximity to another, unidentified individual, the jury would view it as evidence of uncharged crimes and hence "proof of [the shooter's] bad character, criminal personality, or dangerousness."[20] This, Strickland contends, implicates Delaware Rule of Evidence 404(b), which circumscribes the use of evidence of uncharged crimes. To be clear, Strickland does not argue that the video evidence was inadmissible under Rule 404(b); he readily concedes that it was admissible to prove that Strickland possessed a firearm. His complaint is that the Superior Court was required to, but did not, give a limiting instruction as previously mentioned even though he did not request one. Strickland's argument spurs us to review Rule 404(b) and our case law applying it.

Before the Delaware Uniform Rules of Evidence ("D.R.E.") were adopted in 1980, our courts adhered to "the well-established rule that evidence of other crimes is not, in general, admissible to prove the commission of the offense charged."[21] This rule was codified in D.R.E. 404. Under D.R.E. 404, evidence of a crime, wrong, or other act is inadmissible "to prove a person's character in order to show that on a

---

[19] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[20] Opening Br. at 15.
[21] *Bantum v. State*, 85 A.2d 741, 745 (Del. 1952).

12

particular occasion a person acted in accordance with the character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, *identity*, absence of mistake, or lack of accident."[22] Under D.R.E. 105, if the court admits evidence that is admissible for one purpose, but not for another, "the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."[23]

D.R.E. 404(b), although worded in a slightly different manner,[24] tracks Federal Rule of Evidence 404(b).[25] In *Getz v. State*, this Court explained the genesis and purpose of D.R.E. 404(b):

> The adoption of D.R.E. Rule 404(b), modeled after Federal Rule of Evidence 404(b), formalized the general rule forbidding introduction of character evidence solely to prove that the defendant acted in conformity therewith on the occasion in question. D.R.E. 404(b) [consists] of two sentences: the first proscribing admittance of evidence to prove propensity and the second enumerating illustrative purposes for which evidence of other acts, crimes, or wrongs may be used. Thus, D.R.E. 404(b) forbids the proponent, usually the prosecutor, from offering evidence of the defendant's uncharged misconduct to support a general inference of bad character. For purposes of D.R.E. 404(b), character evidence refers to the disposition or propensity of a defendant to commit certain crimes, wrongs or acts.
>
> The second sentence of D.R.E. 404(b), however, permits introduction of such evidence for reasons other than proving propensity, "such as proof of motive, opportunity, intent, preparation,

---

[22] D.R.E. 404(b)(1)–(2) (emphasis added).
[23] D.R.E. 105.
[24] D.R.E. 404(b) limits the admissibility of "evidence of a crime, wrong, or other act"; F.R.E 404(b) limits "[e]vidence of any other crime, wrong, or act. . . ."
[25] D.R.E. 404 cmt.

13

plan, knowledge, identity, or absence of mistake or accident." D.R.E. 404(b). Hence, evidence of prior misconduct is admissible when it has "independent logical relevance" and when its probative value is not substantially outweighed by the danger of unfair prejudice.[26]

Thus, analysis under D.R.E. 404(b) is appropriate when a party seeks to introduce evidence of crimes, wrongs, or acts *other* than the crime charged to suggest an inference that the accused has a propensity to commit that crime. In this case, that did not happen.

Strickland concedes that Rule 404(b) did not bar the prosecution from introducing the video clips that showed the assault weapon protruding from the car window and discharging its ammunition. He allows that

> the "shooting evidence" may have had independent logical relevance as it was material to an issue or ultimate fact in dispute in the case. The State used that evidence to prove identity and actual possession of the firearm and ammunition. If the State proved Strickland fired the weapon, it *ipso facto* proved he possessed a firearm and ammunition.[27]

Even so, Strickland relies on *Weber v. State*, in which this Court explained that "due process requires that whenever evidence of other crimes is admitted [under Rule 404(b)(2)], the requirements of D.R.E. 105 must be expanded to make a limiting instruction mandatory."[28] Strickland acknowledges that *Weber* is distinguishable from this case because the prior criminal conduct at issue in *Weber*

---

[26] 538 A.2d 726, 730 (Del. 1988) (internal citations and footnote omitted).
[27] Opening Br. at 14 (internal footnote omitted).
[28] 547 A.2d 948, 963 (Del. 1988).

"was actually an element of the charges against [the defendant]."[29] He reasons that a limiting instruction is nonetheless mandatory here, as in *Weber*, because the evidence at issue poses the "grave potential for misunderstanding on the part of the jury."[30] But as our Court has held, "*Weber* does not require that an accompanying limiting instruction to be given in every case involving the evidence of other wrong acts,"[31] and the Superior Court "generally does not commit plain error if it fails to give a limiting instruction, *sua sponte*, when evidence of prior bad acts is admitted."[32]

A careful reading of *Weber*, moreover, reveals that it is distinguishable from this case in important respects, the most obvious of which is that *Weber*, unlike this case, involves evidence of prior criminal activity and proceedings. The defendant in *Weber* was charged with intimidation and aggravated intimidation based on threats directed to a prosecution witness. Weber embellished his threats by warning the witness that "I killed once, [and] I'll kill again,"[33] and bragging that he had previously bribed a judge. At trial, Weber objected to the admission of these statements because they would inform the jury of his past criminal experience. According to Weber, the statements "constituted evidence of prior bad acts as

---

[29] Opening Br. at 14.
[30] *Id.* at 15 (quoting *Weber*, 547 A.2d at 956).
[31] *Wooters v. State*, 625 A.2d 280, 1993 WL 169129, at *2 (Del. Apr. 23, 1993) (TABLE).
[32] *Williams v. State*, 796 A.2d 1281, 1289–90 (Del. 2002).
[33] *Weber*, 547 A.2d at 950.

15

described in D.R.E. 404(b)."[34]  The State countered that Weber's statements "were integral elements of the intimidation offenses with which Weber was charged based upon his threats to [the witness]."[35]  The trial judge agreed with the State and overruled Weber's objection.

This Court agreed with the trial judge that Weber's statements were properly admissible under D.R.E. 404(b).  The statements were, after all, "material [] [and] also constitute[d] an element of the charge against him."[36]  The Court noted, however, that the response to Weber's objection under D.R.E. 404(b) should not end with the determination that the evidence of Weber's prior criminal acts was admissible.  Justice Holland, writing for the Court *en banc*, explained:

> This evidence of prior criminal acts cannot be submitted to the jury without guidance from the trial court. Therefore, when such evidence is admitted, it "must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." In this case, the admission of the evidence of Weber's statements concerning his prior activities was not accompanied by such a cautionary instruction. Since such an instruction was necessary for a proper understanding of the evidence by the jury and to assure a fair trial, the failure to give such an instruction was reversible error.[37]

---

[34] *Id.* at 955.
[35] *Id.*
[36] *Id.* at 956.
[37] *Id.* (quoting *Commonwealth v. Claypool*, 495 A.2d 176, 179 (Pa. 1985)).

16

The Court then addressed "a separate issue about the admissibility of a separate reference to [Weber's] prior conduct[,]"[38] namely, witnesses' references to Weber's prior trial. In this context, the Court emphasized that when the jury learns of "prior [criminal] activity and possibly the prior conviction . . . , in the context of the second unrelated trial, the trial judge's instruction that outlines the limited purpose for which the prior criminal activity or conviction is admitted is mandatory."[39] Although Strickland's argument in his briefs is more restrained, at oral argument he argued that *Weber* stands for the proposition that a trial court must give a limiting instruction *sua sponte* when the jury is exposed to any other criminal activity attributed to the defendant even when the prosecution does not depict it as such and when defense counsel not only does not request the instruction but does not even invoke D.R.E. 404(b). We do not agree that *Weber* goes that far.

We start with Strickland's failure to invoke D.R.E. 404(b). Although he now posits that D.R.E. 404(b) is plainly applicable, Strickland's failure to recognize this as such at trial speaks volumes. We suspect that Strickland's silence at trial was the product of his recognition then that the evidence he now challenges was not subject to D.R.E. 404(b) at all.

---

[38] *Id.*

[39] *Id.* at 956–57.

It bears repeating here that Strickland acknowledges that Rule 404(b) did not bar the State from introducing the video clips that showed the assault weapon protruding from the car window and discharging its ammunition. Likewise, Strickland concedes that the State offered the evidence to prove the identity of the person charged and that person's actual possession of a firearm and ammunition. In Strickland's words, "[i]f the State proved Strickland fired the weapon, it *ipso facto* proved he possessed a firearm and ammunition."[40] These admissions point up the fallacy underlying Strickland's contention that Rule 404(b) is applicable to the disputed evidence. As one treatise puts it, "[e]vidence concerning acts which are 'intrinsic' to, i.e., part of, the events in question [is] not subject to Fed. R. Evid. 404(b), a state equivalent, or the corresponding common law principle."[41] Relatedly, "[i]f uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime."[42] And D.R.E. 404(b) is only concerned with crimes, wrongs, or acts other than the crime charged.

These statements reflect the reasoning of the United States Court of Appeals for the Third Circuit in *United States v. Green*.[43] In *Green*, the Third Circuit reviewed the evolution of the "res gestae" exception to the prohibition on the

---

[40] Opening Br. at 14.

[41] 3 Anne T. McKenna & Clifford S. Fishman, *Jones on Evidence: Civil and Criminal* § 17:13 (7th ed. 2004) (Nov. 2023 update).

[42] *Id.*

[43] 617 F.3d 233 (3d Cir. 2010).

admission of other uncharged crimes. Under the "res gestae" exception, uncharged crimes were admissible "not to demonstrate propensity, but to establish the 'res gestae' ('thing done') of the charged crime."[44] The court noted that, after the enactment of Rule 404(b) "the term 'res gestae' has largely given way to its 'modern, de-Latinized' descendent: 'intrinsic evidence[.]'"[45] Employing this rubric,

> modern cases divide evidence of other crimes and bad acts into two categories: those "extrinsic" to the charged offense, and those "intrinsic" to it. Extrinsic evidence must be analyzed under Rule 404(b); intrinsic evidence need not be. Recalling the logic for allowing res gestae evidence, courts today exempt intrinsic evidence from application of Rule 404(b) on the theory that there is no "other" wrongful conduct at issue; the evidence is admissible as part and parcel of the charged offense.[46]

And, the court reasoned, "evidence is intrinsic if it 'directly proves' the charged offense . . . giv[ing] effect to Rule 404(b)'s applicability only to the evidence of 'other crimes, wrongs, or acts.'"[47] Stated simply, "[i]f uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime."[48] In consequence, "labeling evidence as 'intrinsic' relieve[s] . . . the court of its obligation to give a limiting instruction upon defense counsel's request."[49]

---

[44] *Id.* at 241.

[45] *Id.* at 245 (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:33 (3d ed. 2003)).

[46] *Id.* at 254.

[47] *Id.* at 248–49 (internal citations omitted).

[48] *Id.* at 249.

[49] *Id.* at 247 (quoting *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000)).

Here, it cannot be disputed that the video evidence depicting the discharge of the weapon from the car Strickland was driving was intrinsic to the crime charged. As Strickland himself concedes, it showed that the car's occupant possessed a firearm *and* ammunition. The evidence proved the very acts with which Strickland was charged and thus does not fall within the ambit of D.R.E. 404(b). It follows that the trial court was not obligated to give *sua sponte* a limiting instruction as Strickland now belatedly claims. In sum, we discern no error here, still less one that is plain.

In adhering to the Third Circuit's application of the "intrinsic evidence" label in *Green*, we are mindful that the label has been the object of criticism by some courts.[50] Indeed, *Green* itself takes aim at the distinction between intrinsic and extrinsic evidence, especially when it is employed to ascertain whether prior bad acts are "inextricably intertwined" with the crime charged.[51] For that reason, the

---

[50] For instance, the D.C. Circuit Court of Appeals, after noting that "[c]ourts have denominated evidence of the same crime 'intrinsic,' and evidence of 'other' crimes 'extrinsic[,]'" questions "what function this interpretation performs." *Bowie*, 232 F.3d at 927 (D.C. Cir. 2000). For the *Bowie* court, drawing the distinction between "intrinsic" and "extrinsic" evidence is unnecessary. "If the so-called 'intrinsic' act is indeed part of the crime charged, evidence of it will, by definition, always satisfy Rule 404(b)." *Id*. Other courts are more comfortable with the distinction. *See, e.g.*, *Rojas v. People*, 504 P.3d 296, 308 (Colo. 2022) ("We join those courts that generally recognize an intrinsic-extrinsic distinction, with extrinsic acts falling under Rule 404(b) and intrinsic acts falling outside the Rule's scope."); *see also State v Rose*, 19 A.3d 985, 1009 (N.J. 2011) (noting that *Green* provides a workable, narrow description of what makes uncharged acts intrinsic evidence of the charged crime, and therefore not subject to Rule 404(b)'s directed purpose requirements); *State v. Ferrero*, 274 P.3d 509, 513 (Ariz. 2012) (adopting *Green*'s definition of intrinsic evidence).

[51] Under this doctrine, evidence is "'inextricably intertwined' with the charged offenses and, therefore, does not implicate the constraints of Rule 404(b) . . . , if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the

20

court in *Green* sought to narrow the categories of evidence that should be considered intrinsic to the crime charged. Be that as it may, we find the distinction useful here to explain why evidence that directly proves the charged offense is not subject to D.R.E. 404(b).

B

Strickland argues that the court's decision to admit two of Walker's three felony-firearms convictions—the two that he asserts did not involve crimes of dishonesty[52]—was reversible error because the court (i) based its determination on an erroneous conclusion that the defense made a partial concession regarding the probative value of the convictions, and (ii) failed to "supply a legal rationale for a judicial decision."[53] Strickland emphasizes that Walker was his only witness and that Walker's credibility was tarnished by admission of the offenses, which were "needlessly cumulative" and created a substantial risk that the jury would draw an

---

defendant was indicted.'" *Pope v. State*, 632 A.2d 73, 76 (Del. 1993) (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)). Neither party has urged us to apply this "carefully circumscribed" doctrine in this case.

[52] We note that the prosecutor's concession that conspiracy to commit a theft of a firearm is not a crime involving dishonesty was generous. Although we honor that concession for the purposes of our analysis here, there is authority from other jurisdictions for the proposition that conspiracy to commit a crime involving dishonesty is itself a crime of dishonesty. *In re Lickstein*, 972 A.2d 314, 316 (D.C. 2009) ("Conviction of conspiracy to commit a crime of moral turpitude is itself a crime of moral turpitude."); *Jenson v. Goresen*, 881 P.2d 1119, 1122 (Alaska 1994) ("[C]onspiracy to poach fish is a crime involving dishonesty."); *State v. Ruen*, 419 N.W.2d 734, 738 (Iowa Ct. App. 1987) ("[I]f the substantive offense underlying a conspiracy conviction is an impeachable offense, then the conspiracy conviction should be usable for impeachment purposes.").

[53] *Holden v. State*, 23 A.3d 843, 846 (Del. 2011).

impermissible character inference that Strickland was "guilty by association with a witness who 'also uses' guns."[54]

The State responds that the Superior Court "performed the required balancing test under D.R.E. 609(a)(1)."[55]  The State also posits that Walker's credibility was already impugned by the fact that he and Strickland were "long-time acquaintances," and by the admission of his conviction for stealing firearms from a federally-licensed firearms dealer.  The State contends that "[r]emoving the two other felony convictions from evidence would do little to improve Walker's credibility, especially since his testimony was uncorroborated by any other evidence and was contradicted by the other trial evidence incriminating Strickland."[56]  That incriminating evidence included "Strickland's flight from the police, abandonment of the white Nissan containing his driver's license, change of clothes, and the location of the wet white tank top and muddy shoes inside Strickland's nearby residence."[57]

The Superior Court's decision to admit evidence of prior felony convictions of a witness for impeachment purposes is subject to a review by this Court for an abuse of discretion.[58]  An abuse of discretion occurs "when a court has exceeded the

---

[54] Opening Br. at 23–24.
[55] Answering Br. at 17.
[56] *Id.* at 20–21.
[57] *Id.* at 21.
[58] *Morris v. State*, 795 A.2d 653, 665 (Del. 2002).

bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice as to produce injustice."[59]  An abuse of discretion also occurs if the court rests an evidentiary decision upon a clearly erroneous finding of fact.[60]

Under Delaware Rule of Evidence 609:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime *must* be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect or (2) involved dishonesty or false statement, regardless of the punishment.[61]

Thus, under D.R.E. 609(2), any crime involving dishonesty or a false statement is admissible for impeachment purposes.  To admit evidence of a felony of a different nature, "the trial court must balance the probative value of the convictions against the risk of prejudice."[62]  "A conviction passing this weighing test 'must be admitted.'"[63]

We first address Strickland's contention that the trial judge based her evidentiary ruling on the erroneous premise that defense counsel had made a partial concession that the probative value of the two convictions putatively not involving

---

[59] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010).
[60] *Talmo v. Union Park Auto.*, 16 A.3d 938, 2011 WL 1528786, at *2 (Del. Apr. 12, 2011) (TABLE) (holding that the Superior Court abused its discretion when it "relied on an incorrect factual allegation").  *See also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (an abuse of discretion occurs if the court's decision "rests upon a clearly erroneous finding of fact . . . .").
[61] D.R.E. 609 (emphasis added).
[62] *Hines v. State*, 248 A.3d 92, 101 (Del. 2021).
[63] *Id.*

23

dishonesty outweighed their prejudicial effect. This contention hinges on Strickland's crediting of the court reporter's punctuation of the trial judge's ruling. As transcribed, the ruling appears as follows

> The Court finds then based on at least what sounds like a partial concession by the defense that the probative value in light of the witness' testimony does outweigh any prejudicial effect doing the balancing test, at least for two of the three offenses, and the State would be permitted to ask Mr. Walker about those offenses from 2018.[64]

We agree that, under this rendition, Strickland's reading is reasonable. But if the relative clause modifying "concession" were bracketed by commas, the meaning of the relevant sentence reads differently, as can be seen in the following version:

> The Court finds then[,] based on at least what sounds like a partial concession by the defense[,] that the probative value in light of the witness' testimony does outweigh any prejudicial effect doing the balancing test, at least for two of the three offenses, and the State would be permitted to ask Mr. Walker about those offenses from 2018.

In this version, the concession is decoupled from the balancing of probative value and prejudicial effect and, in our view, likely refers to the concessions defense counsel actually made—that the witness's theft-of-firearm conviction was a crime of dishonesty and not subject to a balancing test and that the defense would not object to the State's use of an uncertified record to prove the witness's criminal history. Considering that these concessions were made immediately before the court's ruling, it is far more likely in our view that they were the concessions to which the court

---

[64] App. to Opening Br. at A67.

24

was referring. We therefore reject Strickland's contention that the trial court based its decision on an erroneous premise.

We must yet decide, however, whether the trial court's ruling adequately discharged the court's obligation under D.R.E. 609 to determine whether the probative value of admitting the challenged evidence outweighed its prejudicial effect. Strickland contends that the court's failure to make factual determinations and articulate a legal rationale for its ruling was tantamount to not conducting a Rule 609(a) balancing test at all. On this point, Strickland cites two authorities—*Holden v. State*[65] and *Hines v. State*.[66] In *Holden*, the defendant sought reversal of his conviction, arguing that the trial court had erroneously denied his motion to suppress the evidence police had seized during an unlawful pat-down search. The trial judge had denied the suppression motion after an evidentiary hearing "without making any factual findings and without supplying a written or transcribed oral decision for review."[67] This Court observed that "[o]ur case law mandates that a judge make factual determinations and supply a legal rationale for a judicial decision as a matter of law [] [and that] [f]ailure to do so may be an abuse of discretion."[68] But the Court stopped short of finding that the trial court had in fact abused its discretion. Instead,

---

[65] 23 A.3d 843 (Del. 2011).
[66] 248 A.3d 92 (Del. 2021).
[67] *Holden*, 23 A.3d at 846.
[68] *Id.*

it reversed Holden's convictions based on a determination that the frisk at issue was not supported by a reasonable articulable suspicion.

We find *Holden* to be of limited utility here. As mentioned, no abuse of discretion was found there. And we see a fundamental distinction between a potentially case-dispositive decision on a motion to suppress following an evidentiary hearing and what happened here—a Rule 609 evidentiary ruling in the midst of a trial.

*Hines* is more relevant. In *Hines*, this Court considered a challenge to the defendant's convictions based on a D.R.E. 609 ruling at trial. The Court affirmed, holding that "[a]lthough the trial court's analysis of the balancing test was brief, the court performed it as required under the Rule."[69] That analysis, considered adequate by this Court, stated:

> So this is my ruling with respect to the 609 issues . . . [t]here is, of course, always some prejudicial effect in the jury hearing that a defendant was convicted of a felony offense, but there's nothing about these particular felonies that makes them unduly prejudicial in my view, and there's certainly, particularly in a case such as this were we're talking about eyewitness accounts and that I assume, the defense case will have different accounts as to what transpired that day.
>
> Where credibility is an issue I think it is, there is probative value to the jury hearing about the defendant's felony convictions, should he choose to testify, and that the probative value outweighs and prejudicial effects about the jury hearing about these convictions. Of course, all

---

[69] *Hines*, 248 A.3d at 101 n.68.

the jury will hear is what the convictions were and the relevant dates, nothing relating to the underlying offense.[70]

This Court has found briefer analyses sufficient as well. For example, in *Baldwin v. State*,[71] this Court found no abuse of discretion in the court's analysis consisting of two short sentences, which stated:

> I believe the probative value of knowing he is not pristine, if you will, goes to his credibility in a case where credibility is a significant factor. So I think the probative value outweighs the prejudicial effect, or unfair prejudicial effect[72]

In this case, an explanation of the trial court's conclusion that the Rule 609(a) balancing test favored admission of the challenged convictions would have been helpful to the parties and this Court. But when we hold up the trial court's terse ruling next to the examples cited above, we are hard pressed to find it represents an abuse of discretion.

But even if we were to conclude that the trial court's explanation of its balancing of probative value and prejudicial effect was inadequate or that its ruling was erroneous, any such error did not seriously prejudice the defense.[73] Strickland was convicted of PFBPP and PFABPP. In its case in chief, the State relied on the

---

[70] *Id.* at 97–98. The bench ruling can also be found at App. to Appellant's Opening Br. at A101, *Hines*, 248 A.3d 92 (No. 562, 2019).

[71] 129 A.3d 231, 2015 WL 7756857 (Del. Dec. 1, 2015) (TABLE).

[72] *Id.* at *2.

[73] *See Morris*, 795 A.2d at 666 (where erroneous admission of the defendant's kidnapping conviction in the absence of the Rule 609(a) balancing test "did not seriously prejudice the defense," such error "is not an independent ground for reversal.").

surveillance-video evidence, officer testimony, and Strickland's "abandonment of the white Nissan containing his driver's license, change of clothes, and the location of the wet white tank top and muddy shoes inside Strickland's nearby residence."[74] Strickland presented only one witness in his defense, Walker, who testified that Strickland was with him at the time of the incident and that he did not have or shoot a gun. Walker was a critical witness for Strickland, but the court properly admitted his 2018 firearms-related felony conviction; the other firearm-related convictions, which were part of the same 2018 prosecution, were unlikely to influence the jury's assessment of Walker's veracity. The jury, moreover, was also aware that Walker and Strickland were "lifelong friends."[75] Thus the admission of two other felony firearms convictions likely "added little to the impeachment mix."[76] Considering these factors, we conclude that the admission of the challenged convictions does not warrant reversal.

---

[74] Answering Br. at 21.

[75] Strickland argues that admission of the additional convictions created a "substantial risk that the jury would draw the character inference . . . that Strickland was guilty by association with a witness who 'also uses' guns." But Strickland admits that Walker's conviction for stealing firearms from a federally licensed dealer was admissible, and he has presented no compelling argument why the two related firearms convictions would alter the mix of information. *See Drumgo v. State*, 44 A.3d 922, 2012 WL 1377596, at \*2 (Del. Apr. 17, 2012) (TABLE) (no error for "failure to conduct the Rule 609(a) balancing test" when admitting prior weapons offense because "the jury was already aware that Drumgo was a person prohibited from possession a deadly weapon.").

[76] *See Reed v. State*, 77 A.3d 272, 2013 WL 5434606, at \*2 (Del. Sep. 25, 2013) (TABLE).

## III

For the reasons set forth above, we affirm the Superior Court's judgments of conviction.